# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

TERRENCE IVAN DANIELS,[1]          )
                                   )
            Petitioner,            )
                                   )
v.                                 )          Case No. 18-CV-0113-JED-JFJ
                                   )
SCOTT NUNN,[2]                     )
                                   )
            Respondent.            )

## OPINION AND ORDER

Petitioner Terrence Ivan Daniels, a state inmate appearing *pro se*,[3] brings this action under

28 U.S.C. § 2254, seeking federal habeas relief from the criminal judgments entered against him

in the District Court of Tulsa County, Case No. CF-2013-3228.  In his petition for writ of habeas

corpus (Doc. 1), Daniels claims his state custody under those judgments is unlawful because (1) the

State of Oklahoma obtained his convictions without proving his guilt beyond a reasonable doubt,

in violation of his Fourteenth Amendment right to due process, (2) the habitual-offender statute

used to enhance his sentence, Okla. Stat. tit. 21, § 51.1, is unconstitutionally arbitrary, and (3)

appellate counsel performed deficiently and prejudicially, in violation of his Sixth Amendment

---

[1] Daniels filed pleadings in this Court spelling his first name as both Terrance and Terrence. Doc. 1, Pet., at 1; Doc. 11, Reply Br., at 1.  Because the state-court record shows that he was sentenced as Terrence Ivan Daniels, *see* Doc. 8-2, O.R. vol. 2, at 110-23 [288-301], the Court will use that spelling in this opinion.

[2] Daniels is incarcerated at the James Crabtree Correctional Center (JCCC), in Helena, Oklahoma.  The Court therefore substitutes Scott Nunn, the JCCC's Acting Warden, in place of Jason Bryant, the JCCC's former warden, as party respondent.  Fed. R. Civ. P. 25(d); Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  The Clerk of Court shall note this substitution on the record.

[3] Because petitioner appears *pro se*, the Court liberally construes his pleadings.  *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009).

right to the effective assistance of counsel.  Respondent Scott Nunn filed a response (Doc. 7) in

opposition to the petition and provided records from state court proceedings (Docs. 7, 8), and

Daniels filed a reply brief (Doc. 11).  On review of the record, the parties' arguments, and

applicable law, the Court finds and concludes that Daniels has not demonstrated that he is being

held in state custody in violation of the United States Constitution or federal law.  The Court

therefore denies his petition for a writ of habeas corpus.

### BACKGROUND

**I.      Jury trial**

In a second amended felony information filed March 2, 2015, the State of Oklahoma

charged Daniels with trafficking in illegal drugs, in violation of Okla. Stat. tit. 63, § 2-415,

maintaining a place for keeping or selling controlled drugs, in violation of Okla. Stat. tit. 63, § 2-

404, possessing a firearm after former conviction of a felony, in violation of Okla. Stat. tit. 21,

§ 1283, and possessing a firearm while in commission of a felony, in violation of Okla. Stat. tit.

21, § 1287.  Doc. 8-1, O.R. vol. 1, at 183-84 [176-77].[4]  For sentencing purposes, the State further

alleged that Daniels had five prior felony convictions.  Doc. 8-1, O.R. vol. 1, at 186 [179].

Daniels' case proceeded to a jury trial, and the State presented evidence establishing the

following facts.  On July 1, 2013, several law enforcement officers with the Tulsa Police

Department executed a search warrant on the residence located at 1842 North St. Louis, in Tulsa,

Oklahoma.  Doc. 8-9, Tr. Trial vol. 2, at 151-54 [328-31].  When officers arrived at the home,

there were four people inside:  Daniels, his father, Wilmer Daniels,[5] Rashaun Parker, and Dejuan

---

[4] The Court's citations generally refer to the CM/ECF header pagination.  However, when citing to transcripts or the original record (O.R.), the Court also provides the original page numbers, in brackets, to the extent those numbers differ from the CM/ECF header pagination.

[5] To avoid confusion, the Court will refer to Daniels' father only by his first name.

Richardson. Doc. 8-9, Tr. Trial vol. 2, at 172-73 [349-50], 194 [371]. Daniels, Wilmer, and Parker lived at 1842 North St. Louis, but Richardson did not. Doc. 8-9, Tr. Trial vol. 2, at 194-95 [371-72], 203 [380]; Doc. 8-10, Tr. Trial vol. 3, at 88-89 [555-56].

When Officer James Dawson approached the house to knock on the door, he looked through the glass panel storm door and saw Parker and Richardson in the living room. Doc. 8-9, Tr. Trial vol. 2, at 155 [332], 184 [361]. Parker was standing up, and Richardson was sitting on a recliner. Doc. 8-9, Tr. Trial vol. 2, at 155 [332], 184-85 [361-62]. At Dawson's direction, Parker and Richardson came to the front door, and officers placed them in handcuffs. Doc. 8-9, Tr. Trial vol. 2, at 155 [332].

Officer Dawson then saw Daniels walk from the kitchen area toward the front of the house. Doc. 8-9, Tr. Trial vol. 2, at 155-57 [332-34], 186 [363]. Daniels asked why the officers were there and, when Dawson replied that they were there to execute a search warrant, Daniels tried to close the door on the officers. Doc. 8-9, Tr. Trial vol. 2, at 156-57 [333-34], 186 [363]. According to Dawson, Daniels also "began digging in his pocket" when he tried to close the door. Doc. 8-9, Tr. Trial vol. 2, at 156-57 [333-34]. When the officers pushed the door open, Daniels "ran into the kitchen," and Dawson saw Daniels' "arm flail" as if he might "have thrown something," but Dawson did not see any item that Daniels might have thrown. Doc. 8-9, Tr. Trial vol. 2, at 156-57 [333-34], 189-91 [366-68]. The last person Dawson saw was Wilmer, who walked into the living room from a back bedroom. Doc. 8-9, Tr. Trial vol. 2, at 201-02 [378-79].

In the living room, officers found a loaded handgun underneath the couch and a cigarette box in the recliner where Richardson had been sitting. Doc. 8-9, Tr. Trial vol. 2, at 161 [338], 184 [361]. The cigarette box contained what appeared to Dawson to be "approximately three-and-a-half grams" of cocaine base. Doc. 8-9, Tr. Trial vol. 2, at 161 [338], 184-85 [361-62]. In the

bathroom, officers located a small plastic cup on a shelf above the toilet. Doc. 8-9, Tr. Trial vol. 2, at 161-62 [338-39]. Inside the cup Dawson found "a fairly significant size bag" containing what appeared to be cocaine base. Doc. 8-9, Tr. Trial vol. 2, at 161-62 [338-39]. In the kitchen, officers found a .357 Taurus revolver and a box of plastic sandwich bags in an open cabinet, a plastic bag containing what appeared to be cocaine base and a razor blade near the top of the open kitchen trash can, and a set of digital scales "that had a white powder residue on them" on top of the refrigerator. Doc. 8-9, Tr. Trial vol. 2, at 165-67 [342-44], 200-01 [377-78], 214-19 [391-96], 245-51 [422-28], 272 [449]. In the drawer of a hutch that was "right next to the [kitchen] trash can," officers found some plastic sandwich bags with the corners "ripped off" and "various rounds of ammunition" that appeared to be for a shotgun or rifle. Doc. 8-9, Tr. Trial vol. 2, at 165 [342], 217-20 [394-97]. In a drawer of the same hutch, officers found a piece of mail, dated May 18, 2013, and addressed to Daniels at 1842 North St. Louis. Doc. 8-9, Tr. Trial vol. 2, at 234-35 [411-12]; Doc. 8-10, Tr. Trial vol. 3, at 91 [558]. In the attached garage, officers found a .22 caliber semi-automatic pistol inside a black travel bag. Doc. 8-9, Tr. Trial vol. 2, at 169-70 [346-47], 188 [365], 238-41 [415-18], 271 [448]. Officer Dawson testified that officers did not find any guns or drugs on Daniels' person and that Daniels' fingerprints were not found on any of the items recovered during the search. Doc. 8-9, Tr. Trial vol. 2, at 211 [388].

Several items recovered during the search were submitted for forensic and firearms analysis. Doc. 8-9, Tr. Trial vol. 2, at 262-63 [439-40]; Doc. 8-10, Tr. Trial vol. 3, at 62 [529], 79-80 [546-47]. Jared Lieser, a forensic scientist, tested and weighed the substances from the plastic bags that were found in the kitchen trash can and inside the plastic cup from the bathroom. Doc. 8-10, Tr. Trial vol. 3, at 56 [523], 62-66 [527-33]. Lieser concluded that the substance in each bag was cocaine base and that the contents of these bags had a combined net weight of 5.42

4

grams. Doc. 8-10, Tr. Trial vol. 3, at 64-66 [531-33]. Frances Randall, a firearms examiner, examined and test-fired the .357 revolver found in the kitchen cabinet and the .22 caliber semi-automatic pistol found in the attached garage and determined that both were operational—meaning both firearms were capable of firing live rounds of ammunition. Doc. 8-10, Tr. Trial vol. 3, at 77 [544], 80-84 [547-51].

Based on his knowledge, training and experience, Officer James Dawson testified that finding digital scales covered in white powder residue, plastic sandwich bags with ripped corners, and several packages of suspected cocaine base was "highly indicative of street-level drug sales." Doc. 8-9, Tr. Trial vol. 2, at 165-66 [342-43]. He also testified that "locating three firearms in th[e] residence along with narcotics" was significant because "[c]rack cocaine sales typically— almost always go hand-in-hand with firearms possession." Doc. 8-9, Tr. Trial vol. 2, at 171 [348]. Dawson further testified that cocaine base is commonly ingested by smoking it using either a glass or metal pipe. Doc. 8-9, Tr. Trial vol. 2, at 172 [349]. Dawson testified that no smoking devices were recovered during the search, indicating to him that the cocaine base found in the residence likely was intended for distribution rather than personal use. Doc. 8-9, Tr. Trial vol. 2, at 172 [349].

Dawson testified that he had prior interactions with Daniels at the residence at 1842 North St. Louis, beginning about one year before officers executed the search warrant at that residence. Doc. 8-9, Tr. Trial vol. 2, at 172-77 [349-54]. First, in May 2012, Dawson encountered Daniels, and Daniels told Dawson that he lived at 1842 North St. Louis with his father, Wilmer. Doc. 8-9, Tr. Trial vol. 2, at 172-73 [349-50]. Next, in October 2012, Dawson and another officer arrested Brandon Savage for possession of "approximately three grams" of cocaine base while Savage was "standing directly in front of . . . the yard-driveway area" of 1842 North St. Louis. Doc. 8-9, Tr.

Trial vol. 2, at 176-77 [353-54].  When the officers arrested Savage, Dawson saw Daniels at the residence.  Doc. 8-9, Tr. Trial vol. 2, at 177 [354].  Finally, in June 2013, Dawson and another officer were conducting surveillance at 1842 North St. Louis when they saw Parker's vehicle drive away from the house.  Doc. 8-9, Tr. Trial vol. 2, at 173-75 [350-52].  The officers conducted a traffic stop about one or two blocks away from the house.  Doc. 8-9, Tr. Trial vol. 2, at 173-75 [350-52].  When Parker got out of the vehicle, Dawson saw Parker "place[] an item in the bush" before she complied with the officers' commands to walk to their patrol car.  Doc. 8-9, Tr. Trial vol. 2, at 173-74 [350-51].  Officers recovered the item, identified it as cocaine base through a field test, and arrested Parker.  Doc. 8-9, Tr. Trial vol. 2, at 173-75 [350-52].  After the officers arrested Parker for possession of cocaine base, they drove by 1842 North St. Louis, and Dawson saw Daniels standing in the driveway.   Doc. 8-9, Tr. Trial vol. 2, at 175-76 [352-53].

Daniels' trial proceeded in three parts.  At the conclusion of the first part, the jury found Daniels guilty of trafficking in illegal drugs, maintaining a place for keeping or selling controlled drugs, and possessing a firearm while in commission of a felony.  Doc. 8-11, Tr. Trial vol. 4, at 79 [674].  During the second part, the State presented evidence that Daniels had a prior felony conviction for robbery with a dangerous weapon, and the jury found him guilty of possessing a firearm after former conviction of a felony.  Doc. 8-12, Tr. Trial vol. 5, at 15-16 [697-98], 24-25 [706-07].  During the third part, the State presented evidence that Daniels had five prior felony convictions.  Doc. 8-12, Tr. Trial vol. 5, at 27-31 [709-13].  The jury found that Daniels committed each current crime of conviction after having two former convictions for felonies and recommended 30 years' imprisonment for the trafficking conviction, four years' imprisonment for maintaining a place to keep or sell drugs, six years' imprisonment for possessing a firearm in commission of a felony, and three years' imprisonment for possessing a firearm after former

conviction of a felony.  Doc. 8-12, Tr. Trial vol. 5, at 42-43 [724-25].

On March 10, 2015, the trial court imposed the sentences recommended by the jury, ordered the first three sentences to be served concurrently, and ordered the fourth sentence to be served consecutively to the concurrent sentences—for a total prison sentence of 33 years.  Doc. 8-14, Tr. Sentencing Hr'g, at 4-5.  The trial court also imposed a one-year term of post-imprisonment supervision.  Doc. 8-14, Tr. Sentencing Hr'g, at 6.

## II.    Direct appeal

Represented by counsel, Daniels filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA).  Appellate counsel raised the following propositions of error:

1.  Mr. Daniels' convictions for two offenses for one possession of firearms violated the protections against double punishment and double jeopardy.

2.  Evidence secured under authority of the search warrant should have been suppressed as the affidavit in support of the warrant was insufficient to establish probable cause in violation of [Mr. Daniels'] rights under the Fourth Amendment to the United States Constitution and Article 2, Section 30 of the Oklahoma Constitution.

3.  The jury was improperly instructed that it must assess a $25,000 fine for Mr. Daniels' conviction for trafficking in illegal drugs, after former conviction of two or more felonies.

4.  The State failed to prove, beyond a reasonable doubt, that Mr. Daniels constructively possessed cocaine base.

5.  The State failed to prove, beyond a reasonable doubt, that Mr. Daniels constructively possessed any firearm.

6.  There was insufficient evidence to prove, beyond a reasonable doubt, that Mr. Daniels used a firearm while committing a felony.

7.  The State presented insufficient evidence that Mr. Daniels maintained a residence for the purpose of using or selling illegal drugs.

8.  The judgments and sentences do not accurately state the jury verdicts.

9.  [Mr. Daniels] was denied the effective assistance of counsel to which he was entitled under the 6th and 14th Amendments to the United States Constitution and Art. II, §§ 7 and 20 of the Oklahoma Constitution.

Doc. 7-1, Aplt's Br., at 2-3 (full capitalization omitted).  In an unpublished summary opinion filed November 30, 2016, the OCCA affirmed Daniels' convictions and sentences.  Doc. 7-3, *Daniels v. State*, No. F-2015-572 (Okla. Crim. App. 2016) (OCCA Op.), at 1, 6.  Except for proposition eight,[6] the OCCA rejected all propositions on the merits.  Doc. 7-3, OCCA Op., at 3-5.

### III.     Postconviction proceedings

Proceeding *pro se*, Daniels filed an application for postconviction relief in state district court on December 28, 2016, asserting four propositions.  Doc. 7-4, Appl., at 1.  Daniels alleged that (1) the trial court lacked jurisdiction to sentence him because Okla. Stat. tit. 21, § 51 "and its successor," Okla. Stat. tit. 21, § 51.1, "are unconstitutional" (proposition one), (2) the lack of sentencing guidelines in Oklahoma results in arbitrary punishment, in violation of his due process rights provided by the state and federal constitutions (proposition three), (3) the State failed to present sufficient evidence to support his conviction for trafficking in cocaine base because it failed to show that he possessed the requisite quantity for trafficking (proposition four), and (4) appellate counsel performed deficiently and prejudicially by failing to raise the claims alleged in propositions one, three and four (proposition two).  Doc. 7-4, Appl., at 2-8.

The state district court denied Daniels' application for postconviction relief on April 17, 2017.  Doc. 7-5, Dist. Ct. Order, at 1, 14.  The state district court found that proposition four was barred by *res judicata* because it was raised and rejected on direct appeal and that propositions one and three were waived because they could have been, but were not, raised on direct appeal.  Doc. 7-5, Dist. Ct. Order, at 6.  Applying *Strickland v. Washington*, 466 U.S. 668 (1984), and *Logan v.*

---

[6] As to proposition eight, the OCCA declined to "correct scrivener's errors in the Judgment and Sentence" because Daniels did not first seek that remedy in state district court.  Doc. 7-3, OCCA Op., at 5.

*State*, 293 P.3d 969 (Okla. Crim. App. 2013), the state district court evaluated the ineffective-assistance-of-appellate-counsel (IAAC) claim Daniels asserted in proposition two by addressing the merits of propositions one, three and four and concluded that all three propositions lacked merit.  Doc. 7-5, Dist. Ct. Order, at 7-13.  On that basis, the state district court rejected the IAAC claim asserted in proposition two.

Daniels filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief on June 21, 2017.  Doc. 7-7, *Daniels v. State*, No. PC-2017-453 (Okla. Crim. App. 2017) (OCCA Order), at 1.  The OCCA agreed with the state district court that Daniels waived the claims asserted in propositions one and three and that *res judicata* barred the claim asserted in proposition four.  Doc. 7-7, OCCA Order, at 2.  Like the state district court, the OCCA applied *Strickland* and *Logan* to evaluate the IAAC claim asserted in proposition two.  Doc. 7-7, OCCA Order, at 3-5. The OCCA rejected the IAAC claim, concluding that Daniels failed to show either that "appellate counsel's performance was deficient or objectively unreasonable" or that he suffered "any resulting prejudice."  Doc. 7-7, OCCA Order, at 2, 4-5.

## DISCUSSION

Under 28 U.S.C. § 2254(a), a federal court may not grant habeas relief to a state prisoner unless the prisoner establishes that "he is in custody in violation of the Constitution or laws or treaties of the United States."  *See also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  Daniels asserts three claims to challenge the lawfulness of his state custody: (1) the State obtained his convictions without proving his guilt beyond a reasonable doubt, in violation of his Fourteenth Amendment right to due process, (2) Oklahoma's habitual-offender statute, Okla. Stat. tit. 21, § 51.1, is unconstitutional, and (3) appellate counsel performed

deficiently and prejudicially, in violation of his Sixth Amendment right to the effective assistance

of counsel, by failing to (1) adequately challenge the sufficiency of the evidence to support his

convictions, (2) argue that Okla. Stat. tit. 21, § 51.1 is unconstitutional, and (3) argue that the lack

of sentencing guidelines in Oklahoma leads to arbitrary punishment.  Doc. 1, Pet., at 6-13.

## I.      Standard of review

When a state prisoner challenges the constitutional validity of a state-court judgment

through a 28 U.S.C. § 2254 petition for writ of habeas corpus, the scope of review is limited.[7]  This

is so because state courts, like federal courts, have an "obligation to guard, enforce, and protect

every right granted or secured by the constitution of the United States and the laws made in

pursuance thereof, whenever those rights are involved in any suit or proceeding before them."

*Robb v. Connolly*, 111 U.S. 624, 637 (1884).  Federal habeas review thus varies depending on how

the state court addressed the prisoner's federal claim.

If the state court adjudicated the merits of the federal claim, the federal court may not grant

habeas relief unless the state prisoner first demonstrates that the state court's decision on the claim

either (1) "was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1),[8]

(2) "involved an unreasonable application of clearly established Federal law," *id.* § 2254(d)(1), or

(3) "was based on an unreasonable determination of the facts in light of the evidence presented in

---

[7] In most cases, a state prisoner must file a federal habeas petition within one year of the
date on which his state-court judgment became final, 28 U.S.C. § 2244(d)(1)(A), and, before
seeking federal habeas relief, the prisoner must exhaust available state-court remedies, 28 U.S.C.
§ 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state
courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).  Nunn concedes that Daniels
timely filed the petition and exhausted available state remedies as to all claims raised therein.  Doc.
7, Resp., at 2.

[8] As used in §2254(d)(1), the phrase "clearly established Federal law" refers to the holdings
stated in Supreme Court decisions issued on or before the date of the relevant state-court decision.
*House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008).

the State court proceeding," *id.* § 2254(d)(2).

If a state prisoner's federal claim is subject to review under § 2254(d)(1), the federal court's first task is to identify the Supreme Court precedent that governs that claim. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). If clearly established federal law exists, the federal court must "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* "A state-court decision is contrary to clearly established federal law . . . if it 'applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016)). In adjudicating a federal claim, the state court need not cite, or even be aware of, controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Harrington v. Richter*, 562 U.S. 86, 100 (2011) (explaining that state-court decision is entitled to deference even if state court summarily denies a federal claim because "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

A state-court decision involves an unreasonable application of clearly established federal law "if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) (quoting *Williams v. Taylor*, 529 U.S. 392, 407-08 (2000)). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). An unreasonable application must be "objectively unreasonable," *Williams*, 529 U.S. at 409, "not merely wrong," *White v. Woodall*, 572 U.S. 415,

11

419 (2014).  Thus, to overcome either prong of § 2254(d)(1), a prisoner must show that the state-court decision on the federal claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

The inquiry under § 2254(d)(2) focuses on the state court's "determination of the facts" necessary to adjudicate the federal claim. *See House*, 527 F.3d at 1015 ("Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error."). "[W]hen a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a federal claim," the federal court must determine whether the state-court decision rests on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Burt v. Titlow*, 571 U.S. 12, 18 (2013); 28 U.S.C. § 2254(d)(2).  In applying § 2254(d)(2), a federal court must view the state court's factual findings with "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015).  A federal court must also presume the correctness of a state court's factual findings unless the petitioner rebuts the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Ordinarily, to overcome § 2254(d)(2)'s bar to relief, a prisoner must show that the state court's decision either "plainly and materially misstated the record" or "that reasonable minds could not disagree that the [factual] finding was in error." *Smith*, 824 F.3d at 1250.

If, however, the state court declined to review the merits of a federal claim based on its finding that the state prisoner failed to comply with state procedural rules for presenting that claim, the procedural-default doctrine generally precludes federal habeas review of that claim. *Davila v.*

*Davis*, 137 S. Ct. 2058, 2064-65 (2017).  Under that doctrine, when a state court denies relief on a federal claim "based on an adequate and independent procedural rule"[9] a federal court may grant habeas relief only if the prisoner first demonstrates either (1) cause for the procedural default and resulting prejudice or (2) that failure to review the claim will result in a fundamental miscarriage of justice.  *Davila*, 137 S. Ct. at 2064-65; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, if a procedurally defaulted "'claim may be disposed of in a straightforward fashion on substantive grounds,' [a federal court] retains discretion to bypass the procedural bar and reject the claim on the merits." *Smith*, 824 F.3d at 1242 (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1210-11 (10th Cir. 2002)).

Finally, if the prisoner makes the requisite showings under § 2254(d) or to excuse a procedural default, the federal habeas court will review the federal claim *de novo*. *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014); *Welch v. Workman*, 639 F.3d 980, 992 (10th Cir. 2011); *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009).  But even if the federal court's independent review of the federal claim reveals a constitutional error, habeas relief may not be warranted.  Rather, the court "must assess [the error's] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).  And, under the *Brecht* standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects

---

[9] A state procedural rule "is independent if it is separate and distinct from federal law" and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

substantial rights." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

## II.     Analysis

### A.     Sufficiency of the evidence

In claim one, Daniels contends that the State failed to present sufficient evidence at trial to support his convictions, particularly his conviction for trafficking in cocaine base. Doc. 1, Pet., at 6-8. He admits that the evidence established that cocaine base was found in several areas of the home he resided in, but he argues that the State failed to prove (1) that the quantity of cocaine base found met "the statutory requirements for a trafficking charge," (2) that he had knowledge of the presence of each package of cocaine base found, and (3) that he had knowledge of the presence of each firearm found. Doc. 1, Pet., at 8. To support the latter two arguments, Daniels emphasizes that multiple individuals lived in the home and were present when officers executed the search warrant and the State presented no fingerprint evidence to show that Daniels handled or had knowledge of the firearms. Doc. 1, Pet., at 8; Doc. 11, Reply Br., at 4-5.

Daniels challenged the sufficiency of the evidence on direct appeal and through postconviction proceedings. On direct appeal, he claimed that the State failed to prove (1) he constructively possessed cocaine base, (2) he constructively possessed any firearms, (3) he used a firearm while committing a felony, and (4) he maintained a residence for the purpose of keeping or selling illegal drugs. Doc. 7-1, Aplt's Br., at, OCCA Op., at 2-3. The OCCA considered these claims and rejected them, stating,

> In Propositions IV, V, VI, and VII, [Daniels] challenges the sufficiency of the evidence to support his convictions. He claims the evidence fails to show he constructively possessed either the cocaine base or the firearms found during the search, or that he was sufficiently connected to the residence to have "maintained" it for purposes of keeping or selling cocaine. We disagree. From the physical evidence found during the execution of the warrant, [Daniels'] conduct during the search, prior crimes involving the residence, and [Daniels'] admissions to living at the residence, a rational juror could easily conclude that [Daniels] had long used

14

the home as a distribution center for "crack" cocaine, and that he had at least one firearm strategically located to facilitate that activity.  The evidence supports all of the convictions.  Propositions IV, V, VI, and VII are denied.

Doc. 7-3, OCCA Op., at 4-5 (internal citations omitted).

In proposition four of his application for postconviction relief, Daniels argued that the State failed to establish that he possessed at least five grams of cocaine base, as necessary to support his trafficking conviction.  Doc. 7-4, Appl., at 6-8.  The state district court found that Daniels previously raised this argument on direct appeal and that proposition four was therefore barred by *res judicata*.  Doc. 7-5, Dist. Ct. Order, at 6.  The state district court further found that appellate counsel was not ineffective for failing to raise the drug-quantity argument alleged in proposition four because "appellate counsel vigorously litigated this issue in Proposition IV of his direct appeal."  Doc. 7-5, Dist. Ct. Order, at 13.  On postconviction appeal, the OCCA agreed with the state district court's application of *res judicata*, reasoning that proposition four "was raised in his direct appeal."  Doc. 7-7, OCCA Order, at 2-4.

Nunn contends Daniels is not entitled to habeas relief on claim one for two reasons.  First, as to those portions of claim one reasserting the same sufficiency-of-the-evidence arguments that the OCCA considered and rejected on direct appeal, Nunn argues § 2254(d) bars relief.  Doc. 7, Resp., at 7-16.  Second, as to the portion of claim one asserting that the State failed to establish the requisite drug quantity to support the trafficking conviction, Nunn argues that Daniels procedurally defaulted that portion of claim one.  Doc. 7, Resp., at 16-17.  Nunn, however, urges the Court to overlook the procedural default, review this portion of claim one *de novo*, and reject

it on the merits.  Doc. 7, Resp., at 16-17, 21-27.[10]

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). *Jackson* supplies the clearly established legal rule governing a sufficiency-of-the-evidence claim. *Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. Critically, "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*).

---

[10] Nunn suggests that the OCCA's application of *res judicata* to the challenge to the drug-quantity evidence was improper because Daniels did not make that specific argument on direct appeal, but Nunn further suggests that Daniels' challenge was properly procedurally barred because Daniels waived this specific argument by failing to raise in on direct appeal. Doc. 7, Resp., at 17 n. 13. The Court agrees that this is one way to view the record. On direct appeal, Daniels challenged his trafficking conviction by arguing that the State failed to prove that he constructively possessed any cocaine base, but he did not expressly argue that the State failed to prove that he possessed at least 5 grams of cocaine base. Doc. 7-1, Aplt's Br., at 29-35. However, in addressing all four propositions raised on direct appeal to challenge the sufficiency of the evidence, the OCCA reviewed all evidence presented at trial and found that evidence sufficient to support all of Daniels' convictions. Doc. 7-3, OCCA Op., at 2, 4-5. It is plausible that the state district court and the OCCA properly applied *res judicata* by viewing the OCCA's decision on direct appeal as implicitly rejecting Daniels' challenge to the allegedly insufficient evidence of drug-quantity because the OCCA necessarily had to conclude that element was met to affirm the trafficking conviction. Regardless of which view of the record is more accurate, the Court agrees with Nunn that the portion of claim one challenging the sufficiency of the evidence to support the drug-quantity element is procedurally defaulted. The Court also finds it appropriate to overlook the procedural default because the drug-quantity argument may be readily denied on the merits. *See Smith*, 824 F.3d at 1242. However, the Court finds it more efficient to address the merits of the drug-quantity argument in its analysis of the sufficiency-of-the-evidence claim asserted in claim one rather than in evaluating the IAAC claim asserted in claim three.

First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Johnson*, 566 U.S. at 651 (internal citations omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)); *see also id.* at 656 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."). In applying the *Jackson* standard on federal habeas review, the federal court looks to state law to determine the substantive elements of the crime. *Johnson*, 566 U.S. at 655. "[B]ut the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Id.*

To obtain Daniels' conviction for trafficking in cocaine base, the State had to prove that Daniels (1) knowingly (2) possessed (3) five grams or more of cocaine base. Doc. 8-2, O.R. vol. 2, at 49 [227]. The jury was instructed that it could find Daniels possessed more than five grams of cocaine base if he "either alone or jointly with another had constructive possession [of] Cocaine Base" in that amount. Doc. 8-2, O.R. vol. 2, at 46 [224]. The jury was further instructed that if it determined Daniels did not possess the requisite amount, it should consider whether the evidence showed that he committed the lesser included offense of possession of cocaine base which would require proof that Daniels (1) knowingly and intentionally (2) possessed (3) cocaine base. Doc. 8-2, O.R. vol. 2, at 50-52 [228-30].

To obtain Daniels' conviction for possessing a firearm in commission of a felony, the State had to prove that Daniels (1) knowingly and (2) willfully (3) possessed (4) a pistol (5) while committing the felony of trafficking in illegal drugs (6) as shown through proof of each element necessary to establish the felony of trafficking in illegal drugs and (7) the possession of the weapon

was connected to the commission of or attempt to commit the felony. Doc. 8-2, O.R. vol. 2, at 55 [233]. The jury was instructed that, in determining whether the State presented evidence of the requisite nexus between the firearm and the felony, it could consider whether the weapon (1) was actually used to facilitate the commission of the felony, (2) was strategically located for use during the commission of the felony, (3) was intended to be used if a contingency arose or to make an escape, and (4) was to be used either offensively or defensively in a manner which would constitute a threat of harm. Doc. 8-2, O.R. vol. 2, at 55 [233].

To obtain Daniels' conviction for maintaining a place where controlled dangerous substances are kept or sold, the State had to prove that Daniels (1) knowingly or intentionally (2) kept or maintained (3) any dwelling house (4) used for keeping or selling controlled dangerous substances in violation of the law. Doc. 8-2, O.R. vol. 2, at 47 [225]. The jury was instructed that "keeping or maintaining," as used in the elements instruction, requires a showing that Daniels had "control or ownership of the residence," that he could not be convicted of the offense based on a "single, isolated activity" of keeping drugs in or selling drugs from a home, and that "the mere possession of limited quantities of a controlled dangerous substance by the person keeping or maintaining the residence for that person's personal use within that residence is insufficient to support a conviction." Doc. 8-2, O.R. vol. 2, at 47-48 [225-26].

Finally, to obtain Daniels' conviction for possessing a firearm after former conviction of a felony, the jury was instructed that the State had to prove that Daniels (1) knowingly and willfully (2) had at the place where he resides (3) any pistol and (4) that he was previously convicted of a felony by the Tulsa County District Court on October 8, 1981. Doc. 8-2, O.R. vol. 2, at 78 [256]. While the elements instruction referred to "any pistol," the second amended information, as presented to the jury, specifically alleged that Daniels possessed the .357 revolver and the .22

18

caliber pistol that were recovered during the search.  Doc. 8-2, O.R. vol. 2, at 75 [253].

Having reviewed the trial transcripts and the jury instructions as a whole, the Court finds that § 2254(d) bars relief as to claim one.  First, as to those sufficiency arguments that appellate counsel raised on direct appeal, the OCCA applied the *Jackson* standard and determined that a rational juror viewing the evidence in the light most favorable to the State could have found him guilty as charged.  Doc. 7-3, OCCA Op., at 4-5.  And, viewing the record with the double deference that applies to *Jackson* claims asserted in a federal habeas petition, the record does not support Daniels' position that the OCCA either "failed to properly assess the record," making its determination of the facts objectively unreasonable, or applied *Jackson* in an objectively unreasonable manner.  Doc. 11, Reply Br., at 4-5; *see Johnson*, 566 U.S. 651.  As the OCCA reasoned, the jury had before it evidence that Daniels, who was 52 at the time of trial, resided at 1842 North St. Louis with his father for at least one year before law enforcement officers executed the search warrant that led to Daniels' arrest and convictions.  Doc. 8-9, Tr. Trial vol. 2, at 172-77 [349-54]; Doc. 8-10, Tr. Trial vol. 3, at 89 [556].  During the course of that year, Officer James Dawson separately arrested two individuals—Brandon Savage, in October 2012, and Parker, in June 2013—for possession of cocaine base.  Doc. 8-9, Tr. Trial vol. 2, at 172-77 [349-54].  At the time of their respective arrests, Savage was in the yard or driveway of 1842 North St. Louis and Parker was arrested immediately after she drove away from that residence.  Doc. 8-9, Tr. Trial vol. 2, at 172-77 [349-54], 195 [372].  Officer Dawson saw Daniels at or just outside the residence when he made both arrests.  Doc. 8-9, Tr. Trial vol. 2, at 172-77 [349-54].  Richardson, the fourth person in the residence at the time of the search, did not live there and, of the three residents who were in the home at the time of the search (Daniels, Wilmer and Parker), Daniels was the only person who reacted to the presence of law enforcement officers by attempting to close the door on

the officers, running toward the kitchen, digging in his pocket and making a movement with his harm that was perceived by Dawson as consistent with an attempt to conceal or discard evidence. Doc. 8-9, Tr. Trial vol. 2, at 155-57 [332-34], 186-91 [363-68].  During the search, officers discovered packages of cocaine base and other items commonly used to distribute cocaine base, including digital scales and plastic sandwich bags, in the kitchen and bathroom, and two operational firearms—one in a kitchen cabinet, and one in a travel bag in the garage—but officers found no smoking devices that would suggest the cocaine base found in the home was intended for personal use.  Doc. 8-9, Tr. Trial vol. 2, at 161-72 [338-49]; Doc. 8-10, Tr. Trial vol. 3, at 62-66 [529-33], 80-84 [547-51].  On this record, it was not objectively unreasonable for the OCCA to conclude that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319, and to therefore refuse to set aside the jury's verdicts.  Thus, § 2254(d) bars relief on this portion of claim one.

Second, on *de novo* review of Daniels' argument that the State failed to prove he possessed the requisite quantity (five grams) of cocaine base to support the trafficking conviction, the Court cannot say that the jury's finding regarding the amount of cocaine base found, or its resulting verdict that Daniels was guilty of trafficking in cocaine base, was "so insupportable as to fall below the threshold of bare rationality." *Johnson*, 566 U.S. at 656.  The forensic scientist who tested the substances found in the packages of suspected cocaine base recovered from the kitchen trash can and the cup found in the bathroom determined that those substances were, in fact, cocaine base and that the combined net weight of the contents of these packages was 5.42 grams.  Doc. 8-10, Tr. Trial vol. 3, at 62-66 [529-33].  Viewing this evidence, together with the significant circumstantial evidence described above regarding Daniels' constructive possession of the packages of cocaine base found in the trash can and the bathroom, in the light most favorable to

the State and giving due deference to the jury's role as factfinder, the Court cannot say that "no rational trier of fact could have agreed with the jury," *Cavazos*, 565 U.S. at 2, that Daniels was guilty of trafficking cocaine base.  Thus, Daniels has not established a constitutional error as to this portion of claim one.

For these reasons, Daniels is not entitled to federal habeas relief on his claim that State failed to prove his guilt as to each conviction beyond a reasonable doubt.  The Court therefore denies the petition as to claim one.

## B.      Ineffective assistance of appellate counsel

In his third claim, Daniels contends he was denied his Sixth Amendment right to counsel because appellate counsel (1) failed to adequately challenge the sufficiency of the evidence to support his convictions, (2) failed to argue that Okla. Stat. tit. 21, § 51.1 is unconstitutional, and (3) failed to argue that the lack of sentencing guidelines in Oklahoma results in arbitrary punishment.  Doc. 1, Pet., at 12-13.

Daniels raised this same IAAC claim when he sought postconviction relief.  Applying *Strickland* and *Logan*, the state district court addressed the merits of each underlying claim and determined that appellate counsel was not ineffective because all three claims lacked merit.  Doc. 7-5, Dist. Ct. Order, at 7-13.  Citing *Strickland* and *Logan*, the OCCA concluded that Daniels was not entitled to relief on the IAAC claim because he "failed to establish appellate counsel's performance was deficient or objectively unreasonable" and also "failed to establish any resulting prejudice."  Doc. 7-7, OCCA Order, at 3-5.

Nunn contends that § 2254(d) bars relief on the IAAC claim because the OCCA's decision as to that claim is neither contrary to nor an unreasonable application of clearly established federal law.  Doc. 7, Resp., at 18.  He argues that it was objectively reasonable for the OCCA to reject the

IAAC claim given that the state district court found, and the OCCA agreed, that all three claims Daniels identified as erroneously omitted or inadequately argued by appellate counsel, lacked merit. Doc. 7, Resp., at 21-33.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend VI. To establish a violation of that right, a criminal defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The *Strickland* two-part inquiry applies to claims alleging ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). "When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, [the reviewing court] first examine[s] the merits of the omitted issue." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Id*. However, if the issue has merit, the reviewing court must then determine whether counsel's failure to raise it "was deficient and prejudicial" under *Strickland*. *Id*. The *Strickland* standard is deferential, and "[e]very effort must be made to evaluate the conduct from counsel's perspective at the time." *Littlejohn v. Trammell*, 704 F.3d 817, 859 (10th Cir. 2013) (quoting *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009)).

Because the OCCA correctly identified *Strickland* as the clearly established federal law governing Daniels' IAAC claim, Daniels cannot demonstrate that the OCCA's decision is "contrary to" clearly established federal law, as required to overcome the first prong of § 2254(d)(1). *See Williams*, 529 U.S. at 406 (explaining that the "contrary to" clause does not apply to "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case"). Thus, Daniels must show either that the OCCA

unreasonably applied *Strickland*, § 2254(d)(1), or that the OCCA unreasonably determined the facts relevant to the *Strickland* claim, § 2254(d)(2). *See Richter*, 562 U.S. at 101 (noting that, under the unreasonable-application prong of § 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."). In evaluating the reasonableness of the OCCA's decision under the deferential standard of § 2254(d)(1), the Court also must view the reasonableness of appellate counsel's performance under the deferential standard of *Strickland*. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review . . . applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard.").

### 1.      Sufficiency of the evidence

Daniels first faults appellate counsel for not adequately challenging the sufficiency of the evidence to support his convictions claim one of the petition and, in particular, for omitting the drug-quantity argument Daniels asserted on postconviction appeal and in claim one of the petition. Doc. 1, Pet., at 6-8, 12-13. For the reasons previously discussed in evaluating claim one, *see supra* section II.A, Daniels cannot show that appellate counsel performed deficiently, much less prejudicially, either as to briefing and arguing the four separate sufficiency-of-the-evidence claims counsel raised on direct appeal or as to omitting a meritless challenge to the drug-quantity element when the evidence at trial clearly demonstrated that the State established the requisite amount to support the trafficking conviction. As a result, the OCCA's decision as to this portion of the IAAC claim was not objectively unreasonable.

### 2.      Constitutionality of Oklahoma's habitual-offender statute

Next, Daniels contends that appellate counsel should have argued that Oklahoma's

habitual-offender statute, Okla. Stat. tit. 21, § 51.1, is unconstitutional, as he alleges in claim two

of the petition.   Doc. 1, Pet., at 9-11, 13.[11]   Daniels appears to argue that the statute is

unconstitutionally arbitrary because, in some cases, repeat offenders do not receive progressively

harsher sentences as required by the statute, and, as he did in state court, he cites *Thigpen v. State*,

571 P.2d 467 (Okla. Crim. App. 1977), to support this claim. Doc. 1, Pet., at 9-11.  In addition,

he appears to argue that the statute is unconstitutional because it impermissibly "focuses on

punishing a defendant for having committed a *prior* offense rather than the instant one." Doc. 1,

Pet., at 11 (full capitalization omitted; emphasis in original).

Daniels challenged the constitutionality of the habitual-offender statute in his application

for postconviction relief, and the state district court rejected this claim on the merits when it

evaluated Daniels' IAAC claim. Doc. 7-5, Dist. Ct. Order, at 8-11.  The state district court found

Daniels' reliance on *Thigpen* misplaced and rejected his view that that case "stand[s] for the notion

that the sentence imposed for a second or subsequent offender must always be greater than that

which can be imposed on a first-time offender." Doc. 7-5, Dist. Ct. Order, at 9.  The state district

court further reasoned (1) that after *Thigpen* identified a constitutional defect in Oklahoma's

former habitual-offender statute, Okla. Stat. tit. 21, § 51(B), the Oklahoma Legislature enacted

Okla. Stat. tit. 21, § 51.1—the statute that applied to Daniels' sentence—to cure the defect and

(2) that since the enactment of the current version of the habitual-offender statute, "the statute has

---

[11] Daniels independently challenges the constitutionality of Okla. Stat. tit. 21, § 51.1 in claim two of the petition. Doc. 1, Pet., at 9-11. As Nunn contends, the OCCA found Daniels waived this claim by failing to raise it on direct appeal. Doc. 7, Resp., at 16-17. But the OCCA also effectively rejected the claim on the merits by addressing that claim under the rubric of the IAAC claim and agreeing with the state district court that the claim lacked merit. Doc. 7-5, Dist. Ct. Order, at 8-11; Doc. 7-7, OCCA Order, at 2-5. To the extent Daniels procedurally defaulted his independent claim that the sentencing statute is unconstitutional, the Court will overlook the procedural default and address the claim as the OCCA did, only within the framework of the IAAC claim. *Smith*, 824 F.3d at 1242.

withstood every conceivable constitutional attack." Doc. 7-5, Dist. Ct. Order, at 10-11 (gathering cases wherein the OCCA has rejected challenges to the constitutionality of Okla. Stat. tit. 21, § 51.1). The state district court thus concluded that Daniels' "challenge to the lawfulness of his sentence [was] untenable, and, as such, appellate counsel was not ineffective for failing to raise it." Doc. 7-5, Dist. Ct. Order, at 11. On postconviction appeal, the OCCA agreed. Doc. 7-7, OCCA Order, at 2, 4-5.[12]

The OCCA's decision as to this portion of the IAAC claim is not objectively unreasonable. As Nunn argues, because the OCCA agreed with the state district court's assessment of the constitutional attack on Okla. Stat. tit. 21, § 51.1, Daniels "has a decision by the OCCA, albeit through post-conviction, that the issue lacks merit and does not require relief." Doc. 7, Resp., at 29. Thus, even assuming Daniels could show that the OCCA unreasonably assessed appellate counsel's performance regarding the failure to raise a constitutional attack on a statute the OCCA has routinely upheld as constitutional, Daniels cannot show that the OCCA unreasonably determined that he failed to show any resulting prejudice because, as the OCCA reasoned, there is no "reasonable probability that due to the alleged error the outcome of [Daniels'] appeal would have been different." Doc. 7-7, OCCA Order, at 2.

### 3.    Lack of Oklahoma sentencing guidelines

Lastly, Daniels alleges appellate counsel should have argued that the lack of sentencing

---

[12] The OCCA's order on postconviction appeal does not discuss the details of any underlying claims Daniels asserted to support the IAAC claim and, in part, appears to mischaracterize his IAAC claim as asserting that appellate counsel was ineffective in failing to argue trial counsel's ineffectiveness—an underlying claim he did not allege to support the IAAC claim. Doc. 7-7, OCCA Order, at 3-5. Under these circumstances, the Court finds it appropriate to "look through" the OCCA's order affirming the denial of postconviction relief to the state district court's order which "does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

guidelines in Oklahoma leads to arbitrary punishment.  Doc. 1, Pet., at 13.  Daniels does not raise

the sentencing-guidelines claim as an independent basis for federal habeas relief and he does not

further develop this claim in his petition.  Doc. 1, Pet., at 13.  In his reply brief, he argues counsel

performed deficiently because:

> Appellate counsel could have argued to the state courts that while the Truth in
> Sentencing Act was never made operative, there was empirical evidence (scientific,
> objective evidence) that supported the statute and its matrices which could form a
> basis of constitutionally valid sentencing in Oklahoma courts.  Without it, the
> Oklahoma courts provide widely divergent sentencing from county to county and
> case to case.  Moreover, appellate counsel had the responsibility to argue the law:
> in *Solem v. Helm*, 463 U.S. 277 (1983), a majority of the High Court held that the
> constitution demands proportionality in sentencing and set out a three prong test (1)
> gravity of the offense, (2) how Petitioner's sentence compares with others in the
> same jurisdiction, (3) how Petitioner's sentence compares with others in other
> jurisdictions.

Doc. 11, Reply Br., at 7.  Daniels further argues that appellate counsel's failure to raise the

sentencing-guidelines claim resulted in prejudice because, had counsel raised it, the OCCA would

have "reverse[d] and remand[ed] with instruction to reduce the trafficking charge to possession of

a controlled dangerous substance (lesser included offense) and dismissal of the firearms charge."

Doc. 11, Reply Br., at 7.

Daniels raised his sentencing-guidelines claim in postconviction proceedings, and the state

district court rejected it on the merits when it evaluated the IAAC claim.  Doc. 7-5, Dist. Ct. Order,

at 11-13.[13]  Referring to Daniels' reliance on the Truth in Sentencing Act, the state district court

reasoned that Daniels "has no basis upon which to claim entitlement to be sentenced under

legislative enactment that never became law."  Doc. 7-5, Dist. Ct. Order, at 12.  The state district

---

[13] As previously discussed, the state district court found that Daniels waived the
sentencing-guidelines by failing to raise it on direct appeal.  Doc. 7-5, Dist. Ct. Order, at 6.
Nevertheless, both state courts effectively addressed the merits of this claim in evaluating the
IAAC claim.  Doc. 7-5, Dist. Ct. Order, at 11-13; Doc. 7-7, OCCA Order, at 2, 4-5.

court further reasoned that Daniels' "sentences clearly fall within the applicable ranges of punishment" and are therefore lawful.  Doc. 7-5, Dist. Ct. Order, at 12.  As a result, the state district court found that appellate counsel neither performed deficiently nor prejudiced Daniels by failing to raise a non-meritorious claim.  Doc. 7-5, Dist. Ct. Order, at 12-13.  The OCCA agreed with the state district court's assessment that appellate counsel was not ineffective for failing to raise the sentencing-guidelines claim.  Doc. 7-7, OCCA Order, at 2, 4-5.

For two reasons, the Court finds nothing objectively unreasonable about the OCCA's determination that appellate counsel was not ineffective for failing to raise the sentencing-guidelines claim.  First, it was not unreasonable for the OCCA to find appellate counsel should have raised a *Solem* argument on direct appeal to challenge the lack of sentencing guidelines in Oklahoma.  The issue presented in *Solem* was "whether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh nonviolent felony."  463 U.S. at 279.  As Daniels contends, *Solem* construed the Eighth Amendment to "prohibit[] not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  463 U.S. at 284.  But, contrary to Daniels' apparent position, *Solem*'s holding "that a criminal sentence must be proportionate to the crime for which the defendant committed" does not require states to enact sentencing guidelines.  463 U.S. at 290.  Rather, after holding that the Constitution prohibits disproportionate sentencing, the *Solem* Court reiterated that "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals."  463 U.S. at 290.  Second, it was not unreasonable for the OCCA to adopt the state district court's view that due process is not violated by refusing to impose a sentence consistent with state sentencing "matrices" that were established

27

through a "legislative enactment that never became law." Doc. 7-5, Dist. Ct. Order, at 12; *see, e.g., Parker v. Crow*, 822 F. App'x 716, 719 (10th Cir. 2020) (unpublished)[14] (concluding habeas petitioner failed to state a cognizable federal constitutional claim arising from his allegation that he had a vested right to be sentenced under Oklahoma's Truth in Sentencing Act, gathering cases wherein the United States Court of Appeals for the Tenth Circuit has "repeatedly explained" that the Act "never became law" and thus "did not create any federal constitutional claims for those seeking relief" under the Act, and denying petitioner's request for a certificate of appealability).

For these reasons, the Court finds nothing objectively unreasonable about the OCCA's determination that appellate counsel did not perform deficiently or prejudicially by failing to argue that Oklahoma's lack of sentencing guidelines leads to arbitrary punishment.

### 4.    Conclusion as to claims two and three

Based on the foregoing analysis, the Court concludes that § 2254(d) bars relief as to the IAAC claim asserted in claim three of the habeas petition.  The Court further concludes that because this same analysis demonstrates that it was objectively reasonable for the OCCA to reject Daniels' attack on the constitutionality of Okla. Stat. tit. 21, § 51.1 as without merit, § 2254(d) also bars relief as to the claim asserted in claim two of the petition.  The Court thus denies the petition as to claims two and three.

### *CONCLUSION*

Daniels has not demonstrated that "he is in state custody in violation of the Constitution or laws or treaties of the United States," as required to obtain federal habeas relief under 28 U.S.C. § 2254(a).  The Court therefore denies the petition for writ of habeas corpus as to all claims raised

---

[14] Consistent with Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A), the Court cites this unpublished decision for its persuasive value.

therein.  In addition, because the Court finds that reasonable jurists would not debate the Court's assessment of Daniels' claims or find that "the petition should have been resolved in a different manner," the Court declines to issue a certificate of appealability as to any issues raised in the petition.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Scott Nunn in place of Jason Bryant as party respondent.

2. The petition for writ of habeas corpus (Doc. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be issued in this matter.

ORDERED this  23rd  day of March 2021.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE